| STATE OF INDIANA | ) | | IN THE ALLEN SUPERIOR COURT |
|---|---|---|---|
| | ) | SS: | |
| COUNTY OF ALLEN | ) | | CAUSE NO._____ |

| LYNN KINGDON, | ) |
|---|---|
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DO IT BEST CORP., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff alleges against Defendant as follows:

1. The Complainant is Lynn Kingdon, a qualified female employee of the Respondent who at all times material to this Charge performed within the reasonable expectations of her employer. Complainant alleges that she has been discriminated against and retaliated against on the basis of her sex (female), race (Caucasian), age (over 40), and for complaining of the discrimination, in violation of her rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Furthermore, Complainant alleges she was retaliated against for utilizing time off work pursuant to the Family Medical Leave Act ("FMLA") to tend to her serious medical condition.

2. The Respondent is Do It Best Corporation, a company doing business at 6502 Nelson Road, Fort Wayne, Indiana 46803. Respondent is an employer for the purposes of Title VII, § 1981, the ADEA, and the FMLA.

EXHIBIT A

3. Plaintiff filed a Charge of Discrimination, No. 470-2020-03638, with the Equal Employment Opportunity Commission ("EEOC") on August 21, 2020, a copy of which is attached hereto, incorporated herein, and made a part hereof as "Ex. A." The EEOC issued its Notice of Right to Sue on September 20, 2021, a copy of which is attached hereto and incorporated herein as "Ex. B." All jurisdictional requirements have been met, and all administrative remedies have been exhausted for the filing of this lawsuit.

4. Complainant worked for the Respondent for eight (8) years, from June 5, 2012, until her wrongful termination on or about June 19, 2020. At the time of separation from employment Complainant worked the front desk at Respondent's home office.

5. In February 2020, Complainant applied internally for, and was interviewed for, a position in Respondent's Sales Support division. Complainant was not hired for the position. Instead, Respondent hired Amanda Smith, a young woman under the age of forty (in her twenties). Rob Schmeidel, Complainant's supervisor, indicated that another position in Sales Support would be opening in June, and that Complainant would be considered for the position.

6. A young Black man named Donnevin Wolfe had also applied for the same position, but instead was offered a position at the front desk alongside Complainant. Complainant's schedule was 7:00 a.m. to 3:30 p.m. Donnevin worked 8:30 a.m. to 5 p.m. Complainant was tasked with training Donnevin.

EXHIBIT A

7. In March, when the COVID pandemic hit and only essential workers were supposed to report to work, Complainant and Donnevin were among the employees still required to report to work, while the majority of the staff was sent home to work remotely.

8. On April 10, 2020, Complainant began to experience symptoms of COVID-19 while at work and was sent home. After seeking medical care, Complainant applied for FMLA and was approved to take time off work. Complainant was released from her doctor's care to return to work on June 1, 2020.

9. On May 28, 2020, Complainant received a phone call from supervisor Rob Schmeidel, wherein Rob told Complainant that her hours would be changed from her previous shift (7 a.m. to 3:30 p.m.) to 8:30 a.m. to 5 p.m. Complainant protested and explained that she had several upcoming doctor appointments scheduled around 4 p.m., and Rob indicated she should try to move them, but they would work with her if she could not. Complainant was also notified by Rob at this time that Donnevin had been promoted to Sales Support Coordinator, effective June 1.

10. On June 1, 2020, when Complainant returned to work, she discovered Don was still working at the front desk and had assumed her previous schedule. Don indicated he had received no additional training, had not applied for any positions. On June 2, Don indicated to Complainant that while he was aware of the promotion, he had not seen a job description nor been told what he would be doing in the new position. Complainant also learned that no open position had been posted for any other employee to submit an application.

11. Complainant requested a meeting with Rob and Irene in Human Resources, and on June 3rd the three met. Complainant questioned why Don was promoted after only four months of employment (she was far more qualified than he), and when the position had become available. Irene indicated that the position had been created specifically for Donnevin, and was never posted. Complainant asked the following questions, and was provided the following responses:

- Q: Why wasn't the position posted?

    A: The position is being created.

- Q: Why wasn't I considered for the position? I have 8 years' experience with Do It Best Corp.

    A: It was an executive decision.

- Q: Does it have anything to do with me being out on FMLA during the pandemic?

    A: No.

- Q: Does it have anything to do with me being old?

    A: No.

- Q: Does it have anything to do with me being female?

    A: No.

- Q: Does it have anything to do with me being white?

    A: No

- Q: Does it have anything to do with Donnevin being a young Black male?

–4–

EXHIBIT A

> A: No (Rob interjected "how dare you suggest I would promote someone because of their race…)
>
> - Q: What qualifications am I lacking for this position?
>
> A: None. It was an executive decision.

Complainant contends that the Respondent's responses to these questions were false.

12. Immediately after the meeting, Rob and Irene asked Donnevin to join them. Don came out of the meeting with an empty box, and told Complainant he was told to pack his stuff and was moving to the Sales Support room. The following day when Complainant talked to Donnevin, he indicated he felt like "a homeless employee," as he had no desk or prepared area to perform any work in and was only given a laptop computer to work on. Further, all other Sales Support employees were working from home.

13. Complainant request to meet with CEO Dan Starr. On June 5th, the two met. Complainant told Starr that she was more qualified for the position given to Donnevin and had been told she would be considered for the next open position. She also explained that her shift had been changed while she was out on FMLA. She also explained in detail what had been discussed in the meeting with Rob and Irene, and indicated she felt she was being retaliated against for taking FMLA and passed up for a promotion unfairly. Starr told Complainant he did not know the reasons for the promotion of Donnevin, but that he would look into it.

14. On June 16, Starr followed up with Complainant, and only said he was not going to reverse the promotion, and that Donnevin simply "was a fit" for the position. Starr also told

–5–

EXHIBIT A

Complainant that she should apologize to Rob for questioning him about not being offered the promotion.

15. On June 16, 2020, Complainant was questioned by employee Kim Crawford about Donnevin's promotion. Complainant told Kim that she was surprised by it, had been passed over for it unfairly, and repeated the observation she had heard from another employee indicating that it was an odd coincidence that George Floyd was killed on Monday, and on Thursday the young inexperienced black man was promoted, indicating that Complainant believed the promotion was possibly racially motivated.

16. On June 19th, Complainant was called into a meeting and suspended pending "an investigation of discrimination," but was given no further information. She was, however, questioned about whether she had been "offended" that a younger female employee had received the job in Sales Support. On June 26, 2020, Complainant was terminated (effective June 19) for alleged "inappropriate comments regarding a co-worker."

17. Complainant contends that the alleged reason for her termination was false and pretextual, and that in reality, she was repeatedly discriminated against on the basis of her age (passed up for two promotions that were given to much younger, less qualified employees), discriminated against on the basis of her race, discriminated against on the basis of her sex, and retaliated against for complaining of the discrimination and for utilizing the FMLA to tend to her serious medical condition.

18. The Respondent's discriminatory and retaliatory conduct was the direct and proximate cause of Complainant suffering the loss of her job and job-related benefits, including income, and subjected her to emotional distress, humiliation, embarrassment,

inconvenience, and other damages and injuries. Complainant seeks compensatory damages, including attorney fees and costs.

19. Furthermore, Respondent's discriminatory and retaliatory conduct was intentional, knowing, willful, wanton, and in reckless disregard of Complainant's federally protected rights pursuant to Title VII, the ADEA, § 1981, and the FMLA, entitling Complainant to seek punitive and/or liquidated damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant for compensatory damages, punitive damages, liquidated damages, and reasonable attorney fees and costs.

## JURY DEMAND

Pursuant to Rule 38 of the Indiana Rules of Trial Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

**LAW OFFICE OF JENNIFER L. HITCHCOCK**

/s/ Jennifer L. Hitchcock
Jennifer L. Hitchcock, #34635-02
Michael Middleton, #31066-49
116 E. Berry Street, Suite 625
Fort Wayne, IN 46802
Telephone: (260) 240-4644
Facsimile: (260) 498-2655
E-mail: Jennifer@jhitchcocklaw.com
Michael@jhitchcocklaw.com
Attorneys for Plaintiff

EXHIBIT A

11:09:14 a.m. 08-21-2020    4    2604443441

2020-08-21 11:39

02D02-2110-CT-000523    Filed: 10/5/2021 3:35 PM
                                                          Clerk
USDC IN/ND case 1:21-cv-00388-HAB-SLC document 22 filed 10/08/21 page 8 of 14    Allen County, Indiana
                                                          BB

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA<br>[x] EEOC | 470-2020-03638 |

Equal Employment Opportunity Commission **and EEOC**

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Lynn Kingdon | (260) 479-7323 | 05/23/1962 |

| Street Address | City, State and ZIP Code |
|---|---|
| 190 N. Moore Rd., Apt 9106 | Coppell, TX 75019 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Do It Best Corporation | 50+ | (260) 748-5300 |

| Street Address | City, State and ZIP Code |
|---|---|
| 6502 Nelson Road | Fort Wayne, IN 46803 |

DISCRIMINATION BASED ON *(Check appropriate box(es)).*

[X] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [X] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION
[X] OTHER *(Specify)*  FMLA

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 02/2020   Latest: 06/26/2020

[X] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

I. The Complainant is Lynn Kingdon, a qualified female employee of the Respondent who, at all times material to this Charge performed within the reasonable expectations of her employer. Complainant alleges that she has been discriminated against and retaliated against on the basis of her sex (female), race (Caucasian), age (over 40), and for complaining of the discrimination, in violation of her rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Furthermore, Complainant alleges she was retaliated against for utilizing time off work pursuant to the Family Medical Leave Act ("FMLA") to tend to her serious medical condition.

II. The Respondent is Do It Best Corporation, a company doing business at 6502 Nelson Road, Fort Wayne, Indiana 46803. Respondent is an employer for the purposes of Title VII, § 1981, the ADEA, and the FMLA.

III. Complainant worked for the Respondent for eight (8) years, from June 5, 2012 until her wrongful termination on or about June 19, 2020. At the time of separation from employment Complainant worked the front desk at Respondent's home office.

IV. In February 2020, Complainant applied internally for, and was interviewed for, a position in Respondent's Sales Support division. Complainant was not hired for the position. Instead, Respondent hired Amanda Smith, a young woman under the age of forty (in her twenties). Rob Schmeidel, Complainant's supervisor, indicated that another position in Sales Support would be opening in June, and that Complainant would be considered for the position.

V. A young Black man named Donnevin Wolfe had also applied for the same position, but instead was offered a position at the front desk alongside Complainant. Complainant's schedule was 7:00 a.m. to 3:30 p.m. Donnevin worked 8:30 a.m. to 5 p.m. Complainant was tasked with training Donnevin.

VI. In March, when the COVID pandemic hit and only essential workers were supposed to report to work, Complainant and Donnevin were among the employees still required to report to work, while the majority of the staff was sent home to work remotely.

EXHIBIT A

VII. On April 10, 2020, Complainant began to experience symptoms of COVID-19 while at work, and was sent home. After seeking medical care, Complainant applied for FMLA and was approved to take time off work. Complainant was released from her doctor's care to return to work on June 1, 2020.

VIII. On May 28, 2020, Complainant received a phone call from supervisor Rob Schmeidel, wherein Rob told Complainant that her hours would be changed from her previous shift (7 a.m. to 3:30 p.m.) to 8:30 a.m. to 5 p.m. Complainant protested and explained that she had several upcoming doctor appointments scheduled around 4 p.m., and Rob indicated she should try to move them, but they would work with her if she could not. Complainant was also notified by Rob at this time that Donnevin had been promoted to Sales Support Coordinator, effective June 1.

IX. On June 1, 2020, when Complainant returned to work, she discovered Don was still working at the front desk, and had assumed her previous schedule. Don indicated he had received no additional training, had not applied for any positions. On June 2, Don indicated to Complainant that while he was aware of the promotion, he had not seen a job description nor been told what he would be doing in the new position. Complainant also learned that no open position had been posted for any other employee to submit an application.

X. Complainant requested a meeting with Rob and Irene in Human Resources, and on June 3rd the three met. Complainant questioned why Don was promoted after only four months of employment (she was far more qualified than he), and when the position had become available. Irene indicated that the position had been created specifically for Donnevin, and was never posted. Complainant asked the following questions, and was provided the following responses:

- Q: Why wasn't the position posted?
  A: The position is being created.

- Q: Why wasn't I considered for the position? I have 8 years' experience with Do It Best Corp.
  A: It was an executive decision.

- Q: Does it have anything to do with me being out on FMLA during the pandemic?
  A: No.

- Q: Does it have anything to do with me being old?
  A: No.

- Q: Does it have anything to do with me being female?
  A: No.

- Q: Does it have anything to do with me being white?
  A: No

- Q: Does it have anything to do with Donnevin being a young Black male?
  A: No (Rob interjected "how dare you suggest I would promote someone because of their race...)

- Q: What qualifications am I lacking for this position?
  A: None. It was an executive decision.

Complainant contends that the Respondent's responses to these questions were false.

XI. Immediately after the meeting, Rob and Irene asked Donnevin to join them. Don came out of the meeting with an empty box, and told Complainant he was told to pack his stuff and was moving to the Sales Support room. The following day when Complainant talked to Donnevin, he indicated he felt like "a homeless employee," as he had no desk or prepared area to perform any work in

EXHIBIT A

and was only given a laptop computer to work on. Further, all other Sales Support employees were working from home.

XII. Complainant request to meet with CEO Dan Starr. On June 5th, the two met. Complainant told Starr that she was more qualified for the position given to Donnevin and had been told she would be considered for the next open position. She also explained that her shift had been changed while she was out on FMLA. She also explained in detail what had been discussed in the meeting with Rob and Irene, and indicated she felt she was being retaliated against for taking FMLA and passed up for a promotion unfairly. Starr told Complainant he did not know the reasons for the promotion of Donnevin, but that he would look into it.

XIII. On June 16, Starr followed up with Complainant, and only said he was not going to reverse the promotion, and that Donnevin simply "was a fit" for the position. Starr also told Complainant that she should apologize to Rob for questioning him about not being offered the promotion.

XIV. On June 16, 2020, Complainant was questioned by employee Kim Crawford about Donnevin's promotion. Complainant told Kim that she was surprised by it, had been passed over for it unfairly, and repeated the observation she had heard from another employee indicating that it was an odd coincidence that George Floyd was killed on Monday, and on Thursday the young inexperienced black man was promoted, indicating that Complainant believed the promotion was possibly racially motivated.

XV. On June 19th, Complainant was called into a meeting and suspended pending "an investigation of discrimination," but was given no further information. She was, however, questioned about whether she had been "offended" that a younger female employee had received the job in Sales Support. On June 26, 2020, Complainant was terminated (effective June 19) for alleged "inappropriate comments regarding a co-worker."

XVI. Complainant contends that the alleged reason for her termination was false and pretextual, and that in reality, she was repeatedly discriminated against on the basis of her age (passed up for two promotions that were given to much younger, less qualified employees), discriminated against on the basis of her race, discriminated against on the basis of her sex, and retaliated against for complaining of the discrimination and for utilizing the FMLA to tend to her serious medical condition.

XVII. The Respondent's discriminatory and retaliatory conduct was the direct and proximate cause of Complainant suffering the loss of her job and job-related benefits, including income, and subjected her to emotional distress, humiliation, embarrassment, inconvenience, and other damages and injuries. Complainant seeks compensatory damages, including attorney fees and costs.

XVIII. Furthermore, Respondent's discriminatory and retaliatory conduct was intentional, knowing, willful, wanton, and in reckless disregard of Complainant's federally protected rights pursuant to Title VII, the ADEA, § 1981, and the FMLA, entitling Complainant to seek punitive and/or liquidated damages.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

8/21/20
Date

*Lynn Kingdon*
Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

*Lynn Kingdon*

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

[Notary Seal: ALLISON C. OLINGER, NOTARY PUBLIC, STATE OF INDIANA, Commission Number NP0728635, My Commission Expires 03-31-2026]

EXHIBIT A

EEOC Form 161-B (11/2020)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Lynn Kingdon<br>190 N. Moore Road<br>Apt 9106<br>Coppell, TX 75019 | From: | Indianapolis District Office<br>101 West Ohio Street<br>Suite 1900<br>Indianapolis, IN 46204 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 470-2020-03638 | Marc A. Fishback,<br>Enforcement Supervisor | (463) 999-1179 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Marc Fishback**    Digitally signed by Marc Fishback<br>Date: 2021.09.20 14:46:58 -04'00'

Enclosures(s)

For Michelle Eisele,<br>**District Director**

*(Date Issued)*

cc:
| Thomas Kimbrough<br>Barrett McNagny LLP<br>215 East Berry Street<br>Fort Wayne, IN 46802 | Jennifer L. Hitchcock<br>LAW OFFICE OF JENNIFER L. HITCHCOCK<br>116 E. Berry St.<br>Ste 625<br>Fort Wayne, IN 46802 |
|---|---|

EXHIBIT A

Enclosure with EEOC
Form 161-B (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EXHIBIT A

Enclosures(s)

cc: **Jennifer L. Hitchcock**
**LAW OFFICE OF JENNIFER HITCHCOCK**
**116 E. Berry St., Ste 625**
**Fort Wayne, IN 46802**

EXHIBIT A

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**</u>

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one** major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

- An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

EXHIBIT A