UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| LYNN KINGDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:21-CV-383 |
| | ) | |
| DO IT BEST CORP., | ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff alleges against Defendant as follows:

1. The Plaintiff is Lynn Kingdon, a qualified female employee of the Defendant who at all times material to this Charge performed within the reasonable expectations of her employer. Plaintiff alleges that she has been discriminated against and retaliated against on the basis of her sex (female), race (Caucasian), age (over 40), and for complaining of the discrimination, in violation of her rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Furthermore, Plaintiff alleges she was retaliated against for utilizing time off work pursuant to the Family Medical Leave Act ("FMLA") to tend to her serious medical condition.

2. The Defendant is Do It Best Corporation, a company doing business at 6502 Nelson Road, Fort Wayne, Indiana 46803. Defendant is an employer for the purposes of Title VII, § 1981, the ADEA, and the FMLA.

–1–

3. Plaintiff filed a Charge of Discrimination, No. 470-2020-03638, with the Equal Employment Opportunity Commission ("EEOC") on August 21, 2020, a copy of which is attached hereto, incorporated herein, and made a part hereof as "Ex. A." The EEOC issued its Notice of Right to Sue on September 20, 2021, a copy of which is attached hereto and incorporated herein as "Ex. B."  All jurisdictional requirements have been met, and all administrative remedies have been exhausted for the filing of this lawsuit.

4. Plaintiff worked for the Defendant for eight (8) years, from June 5, 2012, until her wrongful termination on or about June 19, 2020.  At the time of separation from employment Plaintiff worked the front desk at Defendant's home office.

5. In February 2020, Plaintiff applied internally for, and was interviewed for, a position in Defendant's Sales Support division.  Plaintiff was not hired for the position.  Instead, Defendant hired Amanda Smith, a young woman under the age of forty (in her twenties). Rob Schmeidel, Plaintiff's supervisor, indicated that another position in Sales Support would be opening in June, and that Plaintiff would be considered for the position.

6. A young Black man named Donnevin Wolfe had also applied for the same position, but instead was offered a position at the front desk alongside Plaintiff.  Plaintiff's schedule was 7:00 a.m. to 3:30 p.m.  Donnevin worked 8:30 a.m. to 5 p.m.  Plaintiff was tasked with training Donnevin.

7. In March, when the COVID pandemic hit and only essential workers were supposed to report to work, Plaintiff and Donnevin were among the employees still required to report to work, while the majority of the staff was sent home to work remotely.

–2–

8. On April 10, 2020, Plaintiff began to experience symptoms of COVID-19 while at work and was sent home. After seeking medical care, Plaintiff applied for FMLA and was approved to take time off work. Plaintiff was released from her doctor's care to return to work on June 1, 2020.

9. On May 28, 2020, Plaintiff received a phone call from supervisor Rob Schmeidel, wherein Rob told Plaintiff that her hours would be changed from her previous shift (7 a.m. to 3:30 p.m.) to 8:30 a.m. to 5 p.m. Plaintiff protested and explained that she had several upcoming doctor appointments scheduled around 4 p.m., and Rob indicated she should try to move them, but they would work with her if she could not. Plaintiff was also notified by Rob at this time that Donnevin had been promoted to Sales Support Coordinator, effective June 1.

10. On June 1, 2020, when Plaintiff returned to work, she discovered Don was still working at the front desk and had assumed her previous schedule. Don indicated he had received no additional training, had not applied for any positions. On June 2, Don indicated to Plaintiff that while he was aware of the promotion, he had not seen a job description nor been told what he would be doing in the new position. Plaintiff also learned that no open position had been posted for any other employee to submit an application.

11. Plaintiff requested a meeting with Rob and Irene in Human Resources, and on June 3rd the three met. Plaintiff questioned why Don was promoted after only four months of employment (she was far more qualified than he), and when the position had become available. Irene indicated that the position had been created specifically for Donnevin,

–3–

and was never posted. Plaintiff asked the following questions, and was provided the following responses:

- Q: Why wasn't the position posted?

  A: The position is being created.

- Q: Why wasn't I considered for the position? I have 8 years' experience with Do It Best Corp.

  A: It was an executive decision.

- Q: Does it have anything to do with me being out on FMLA during the pandemic?

  A: No.

- Q: Does it have anything to do with me being old?

  A: No.

- Q: Does it have anything to do with me being female?

  A: No.

- Q: Does it have anything to do with me being white?

  A: No

- Q: Does it have anything to do with Donnevin being a young Black male?

  A: No (Rob interjected "how dare you suggest I would promote someone because of their race…)

- Q: What qualifications am I lacking for this position?

  A: None. It was an executive decision.

–4–

Plaintiff contends that the Defendant's responses to these questions were false.

12. Immediately after the meeting, Rob and Irene asked Donnevin to join them. Don came out of the meeting with an empty box, and told Plaintiff he was told to pack his stuff and was moving to the Sales Support room. The following day when Plaintiff talked to Donnevin, he indicated he felt like "a homeless employee," as he had no desk or prepared area to perform any work in and was only given a laptop computer to work on. Further, all other Sales Support employees were working from home.

13. Plaintiff request to meet with CEO Dan Starr. On June 5th, the two met. Plaintiff told Starr that she was more qualified for the position given to Donnevin and had been told she would be considered for the next open position. She also explained that her shift had been changed while she was out on FMLA. She also explained in detail what had been discussed in the meeting with Rob and Irene, and indicated she felt she was being retaliated against for taking FMLA and passed up for a promotion unfairly. Starr told Plaintiff he did not know the reasons for the promotion of Donnevin, but that he would look into it.

14. On June 16, Starr followed up with Plaintiff, and only said he was not going to reverse the promotion, and that Donnevin simply "was a fit" for the position. Starr also told Plaintiff that she should apologize to Rob for questioning him about not being offered the promotion.

15. On June 16, 2020, Plaintiff was questioned by employee Kim Crawford about Donnevin's promotion. Plaintiff told Kim that she was surprised by it, had been passed over for it unfairly, and repeated the observation she had heard from another employee indicating that it was an odd coincidence that George Floyd was killed on Monday, and on Thursday the

–5–

young inexperienced black man was promoted, indicating that Plaintiff believed the promotion was possibly racially motivated.

16. On June 19th, Plaintiff was called into a meeting and suspended pending "an investigation of discrimination," but was given no further information. She was, however, questioned about whether she had been "offended" that a younger female employee had received the job in Sales Support. On June 26, 2020, Plaintiff was terminated (effective June 19) for alleged "inappropriate comments regarding a co-worker."

17. Plaintiff contends that the alleged reason for her termination was false and pretextual, and that in reality, she was repeatedly discriminated against on the basis of her age (passed up for two promotions that were given to much younger, less qualified employees), discriminated against on the basis of her race, discriminated against on the basis of her sex, and retaliated against for complaining of the discrimination and for utilizing the FMLA to tend to her serious medical condition.

18. The Defendant's discriminatory and retaliatory conduct was the direct and proximate cause of Plaintiff suffering the loss of her job and job-related benefits, including income, and subjected her to emotional distress, humiliation, embarrassment, inconvenience, and other damages and injuries. Plaintiff seeks compensatory damages, including attorney fees and costs.

19. Furthermore, Defendant's discriminatory and retaliatory conduct was intentional, knowing, willful, wanton, and in reckless disregard of Plaintiff's federally protected rights pursuant to Title VII, the ADEA, § 1981, and the FMLA, entitling Plaintiff to seek punitive and/or liquidated damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant for compensatory damages, punitive damages, liquidated damages, and reasonable attorney fees and costs.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

**LAW OFFICE OF JENNIFER L. HITCHCOCK**

/s/ Jennifer L. Hitchcock
Jennifer L. Hitchcock, #34635-02
Michael Middleton, #31066-49
116 E. Berry Street, Suite 625
Fort Wayne, IN 46802
Telephone:   (260) 240-4644
Facsimile:   (260) 498-2655
E-mail:   Jennifer@jhitchcocklaw.com
         Michael@jhitchcocklaw.com
Attorneys for Plaintiff